IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CORNELL HERBERT** | ) |
| | ) |
| Plaintiff | ) |
| v. | ) Civil Action No. 1:07-cv-1516 |
| | ) |
| **THE ARCHITECT OF THE CAPITOL** | ) |
| | ) |
| Defendant | ) |

## FIRST AMENDED COMPLAINT

In accordance with the District Court's instructions to amend the above-captioned complaint to include the claims that were asserted in Civil Action no. 1:07-cv-01605 and to then dismiss Civil Action no. 1:07-cv-01605, Plaintiff, Cornell Herbert, for his First Amended Complaint against the Defendant Architect of the Capitol, avers the following:

## JURISDICTION

1. Plaintiff invokes the jurisdiction of this Court pursuant to The Congressional Accountability Act of 1995 (2 U.S.C. §1408 (a)), 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

2. This is an action authorized and instituted pursuant to The Congressional Accountability Act, (2 U.S.C. 1301 *et seq.*), Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. sections 2000e, *et seq.*), and the common law.

3. The unlawful employment practices alleged in this Complaint were committed in the District of Columbia.

4. The Plaintiff is African American and a resident of the State of West Virginia.

5. The Defendant, the Plaintiff's current employer, is a United States Congressional Agency located in the District of Columbia.

1

6. Plaintiff has satisfied all administrative and judicial prerequisites to the institution of this action. The Plaintiff filed a timely Request for Counseling before the Office of Compliance raising the violations of the Congressional Accountability Act complained of here. The Plaintiff participated in the Office of Compliance Counseling and Mediation sessions; and the Plaintiff files this Complaint after the expiration of 30 days, and before the expiration of 90-days, following the receipt of the notices of the termination of mediation.

## BACKGROUND FACTS

7. Mr. Herbert reasserts and reavers each of the above paragraphs as if they were specifically restated here.

8. In the fall of 2005, Mr. Herbert initiated a complaint of race-based discrimination with the Office of Compliance. Mr. Herbert's claim included allegations that he was denied training and the opportunity to perform skilled paining tasks that would support his promotion from Grade 7 to Grade 9, that he was denied promotions and performance awards and that he was subjected to informal discipline that should have been directed at his White colleagues instead of him.

9. Prior to initiating his complaint at the Office of Compliance, on or about August 31, 2005, Mr. Herbert discussed his concerns with the Paint Branch Supervisor, Ed Williams, and Deputy Superintendent of the House Office Buildings, Bob Gliech.

10. Following this meeting, in which Messrs. Williams and Gliech failed to address Mr. Herbert's concerns, Mr. Herbert advised Mr. Williams that he would proceed to file a complaint at the Office of Compliance. Mr. Williams responded by asking Mr. Herbert if he was concerned about losing his job as a result of making such a

complaint.

11. Mr. Herbert filed his complaint with the Office of Compliance on or about August 31, 2005. Shortly thereafter, Mr. Herbert discovered that a sticker, which read "WARNING," had been placed on his locker. When Mr. Herbert brought the sticker to Mr. Williams' attention, Mr. Williams responded that Mr. Herbert "must have pissed someone off."

12. Mr. Herbert's first complaint at the Office of Compliance proceeded according to the procedures of the Office of Compliance.

13. Mr. Herbert was promised a promotion to the Grade 9 at the end of January 2007.

14. On December 2, 2006, Mr. Herbert was assigned to a project involving the painting of numerous offices in the Longworth House Office Building, along with a group of temporary painters and a Leader, Charles Brown. When the group entered room 1314, they found that it was full of furniture that needed to be moved before painting could begin. Many of the painters, including the Leader, were upset by the fact that they were required to move the furniture and they complained about that requirement. When the Leader telephoned Ed Williams about the issue, Mr. Williams indicated that if anyone did not want to move furniture, they could come to the office and talk to him about it. Mr. Herbert did just that and explained to Mr. Williams that the painters had been promised that furniture would be moved beforehand. Mr. Williams asked Mr. Herbert if he was refusing to move furniture, and Mr. Herbert responded that he was not refusing to move furniture and he returned to the Longworth Building to finish moving furniture and paint.

15. Upon returning to the Longworth Building, one of the White temporary painters

3

began to insult Mr. Herbert and called him a "nigger," in the presence of the painters and the Leader. The Leader informed Mr. Williams about the incident, and Mr. Williams sent David Dean to talk to Mr. Herbert. Mr. Dean asked Mr. Herbert – as a favor to him – to let the racial slur be forgotten. Mr. Herbert refused to do so. Mr. Herbert then discussed the matter with Mr. Williams. Mr. Williams asked Mr. Herbert to permit the White, temporary painter to apologize to him. When Mr. Herbert again indicated that an apology would not suffice, Mr. Williams sent the temporary painter home. On information and belief, the White temporary painter was terminated only because Mr. Herbert would not let the matter be forgotten with a mere apology.

16. On January 9, 2007, Mr. Williams proposed to officially reprimand Mr. Herbert for 1) failing to perform assigned duties and 2) using inappropriate language in the workplace. These allegations stemmed from the fact that Mr. Herbert, along with the other painters on the Longworth painting crew, complained about having to move furniture before painting and that Mr. Herbert came to discuss the matter of moving furniture with Mr. Williams. No other employee was disciplined.

17. On May 10, 2007, the Defendant – by and though Frank Tiscione (Superintendent of the House Office Buildings) – issued his concurrence of the decision to reprimand Mr. Herbert.

18. On or about June 18, 2007, the Defendant – by and through Stephen Ayers (the Acting Architect of the Capitol) – upheld the issuance of the Reprimand and the Letter of Reprimand was issued to the Plaintiff.

**COUNT I: DISCRIMINATION BASED ON RACE**

4

19. Mr. Herbert repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

20. The official reprimand was proposed and assessed against Mr. Herbert because of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Congressional Accountability Act.

21. As a result of the discriminatory conduct described above, Mr. Herbert was disciplined, thereby damaging his promotion potential and eligibility for performance and other monetary awards, and suffered emotional pain and suffering.

### COUNT II: RETALIATION

22. Mr. Herbert repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

23. The decisions, both to propose and to issue a Letter of Reprimand against Mr. Herbert were motivated by a desire to retaliate against him, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Congressional Accountability Act, for his prior protected activity, namely complaining about Mr. Williams' discriminatory conduct at the Office of Compliance.

24. The retaliatory conduct described above constituted materially adverse employment actions. Mr. Herbert was unjustly singled out for proposed discipline and was ultimately disciplined. He incurred damages, including but not limited to, damage to his promotion potential and eligibility for performance and other monetary awards. The Defendant's Retaliatory Conduct additionally caused Mr. Herbert to suffer emotional pain and suffering.

WHEREFORE, Plaintiff prays that this Court: (i) declare that the employment practices complained of in this Complaint are unlawful in that they violate the Congressional Accountability Act and the Civil Rights statutes made applicable to the Architect of the Capitol therein; (ii) permanently enjoin the Defendant and its agents, officers and employees from engaging in all practices found by this Court to be in violation of the Congressional Accountability Act; (iii) order the Defendant to make the Plaintiff whole by paying Plaintiff any monetary damages proved at trial in addition to compensatory damages in an amount to be determined at trial; (iv) retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendant to file such reports as the Court deems necessary to evaluate such compliance; (v) order the Defendant to pay Plaintiff's costs and expenses and reasonable attorneys' fees in connection with this action; and (vi) grant such other and further relief to the Plaintiff as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully Submitted,
ALDERMAN, DEVORSETZ & HORA, PLLC


_____/s/_____
Leslie D. Alderman III (D.C. # 477750)
1025 Connecticut Ave., NW
Suite 615
Washington, DC 20036
Tel: 202-969-8220
Fax: 202-969-8224
lalderman@adhlawfirm.com
Attorney for the Plaintiff